# RESIDENTIAL CONTRACT OF SALE

**NOTE: FIRE AND CASUALTY LOSSES AND CONDEMNATION.** This contract form does not provide for what happens in the event of fire, or other casualty loss or condemnation before the title closing. Unless different provision is made in this contract, Section 5-1311 of the General Obligations Law will apply. One part of that law makes a Purchaser responsible for fire and casualty loss upon taking possession of the Premises before the title closing.

**WARNING: PLAIN LANGUAGE.** No representation is made that this form of contract for the sale and purchase of real estate complies with Section 5-702 of the General Obligations Law ("Plain Language").

**CONTRACT OF SALE** made as of the  12th day of  July  2021

BETWEEN

**ESTATE OF NACCARATO**

Address: 414 Woodland Drive, Olivebridge, NY 12461, hereinafter called "Seller" and

**IC QUALITY LLC**

Address: 25 Indian Road, Kerhonkson, NY 12446, hereinafter called "Purchaser(s)".

**The parties hereby agree as follows:**

**1.    Premises.** Seller shall sell and convey and Purchaser shall purchase the property, together with all buildings and improvements thereon (collectively the "Premises"), more fully described on a separate page marked "Schedule A," annexed hereto and made a part hereof and also known as:

SBL 46.3-1-3, 414 Woodland Drive, Town of Olive, Ulster County.

Together with Seller's ownership and rights, if any, to land lying in the bed of any street or highway, opened or proposed, adjoining the Premises to the center line thereof, including any right of Seller to any unpaid award by reason of any taking by condemnation and/or for any damage to the Premises by reason of change of grade of any street or highway. Seller shall deliver at no additional cost to Purchaser, at Closing (as hereinafter defined), or thereafter, on demand, any documents that Purchaser may reasonably require for the conveyance of such title and the assignment and collection of such award or damages.

**2.    Personal Property.** This sale also includes all fixtures and articles of personal property now attached or appurtenant to the Premises, unless specifically excluded below. Seller represents and warrants that at Closing they will be paid for and owned by Seller, free and clear of all liens and encumbrances, except any existing mortgage to which this sale may be subject. They include, but are not limited to, plumbing, heating, lighting, attached fixtures and appliances.  The Seller represents that all items are being transferred in "AS IS" condition as of the time of signing of this Contract of Sale, subject to paragraph 17(e) hereof.

**3.    Purchase Price.** The purchase price is                                                                  $325,000.00

payable as follows:

(a) On the signing of this contract, by Purchaser's good check payable to the Escrowee (as hereinafter defined), subject to collection, the receipt of which is hereby acknowledged, to be held in escrow pursuant to paragraph 6 of this contract (the "Downpayment"):                                          $ 32,500.00

(b) Property Condition Disclosure – Exempt (Estate)                                      $      0.00

(c) Balance at Closing in accordance with Paragraph 7:                                      $292,500.00

**4. Existing Mortgage.** (*Delete if inapplicable*)

**5. Purchase Money Mortgage.** (*Delete if inapplicable*)

**6. Downpayment in Escrow.**

(a) Seller's attorney ("Escrowee") shall hold the Downpayment for Seller's account in escrow in a segregated bank account at Key Bank, 267 Wall Street, Kingston, NY 12401, until Closing or sooner termination of this contract and shall pay over or apply the Downpayment in accordance with the terms of this paragraph. Escrowee shall hold the Downpayment in a non-interest-bearing account for the benefit of the parties. If interest is held for the benefit of the parties, it shall be paid to the party entitled to the Downpayment and the party receiving the interest shall pay any income taxes thereon. If interest is not held for the benefit of the parties, the Downpayment shall be placed in an IOLA account or as otherwise permitted or required by law. The Social Security or Federal Identification numbers of the parties shall be furnished to Escrowee upon request. At Closing, the Downpayment shall be paid by Escrowee to Seller. If for any reason Closing does not occur and either party gives Notice (as defined in paragraph 25) to Escrowee demanding payment of the Downpayment, Escrowee shall give prompt Notice to the other party of such demand. If Escrowee does not receive notice of objection from such other party to the proposed payment within (10) business days after the delivery to such party of such Notice, Escrowee is hereby authorized and directed to make such payment. If Escrowee does receive such Notice of objection within such 10-day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by Notice from the parties to this contract or a final, non-appealable judgment, order or decree of a court. However, Escrowee shall have the right at any time to deposit the Downpayment and the interest thereon with the clerk of a court in the county in which the Premises are located and shall give Notice of such deposit to Seller and Purchaser. Upon such deposit or other disbursement in accordance with the terms of this paragraph, Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

(b) The parties acknowledge that, although Escrowee is holding the Downpayment for Seller's account, for all other purposes Escrowee is acting solely as a stakeholder at their request and for their convenience and that Escrowee shall not be liable to either party for any act or omission on its part unless taken or suffered in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee. Seller and Purchaser jointly and severally agree to defend, indemnify and hold Escrowee harmless from and against all costs, claims and expenses (including reasonable attorneys' fees) incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith or in willful disregard of this contract or involving gross negligence on the part of the Escrowee.

(c) Escrowee may act or refrain from acting in respect of any matter referred to herein in full reliance upon and with the advice of counsel which may be selected by it (including any member of its firm) and shall be fully protected in so acting or refraining from action upon the advice of such counsel.

(d) Escrowee acknowledges receipt of the Downpayment by check subject to collection and Escrowee's agreement to the provisions of this paragraph by signing in the place indicated on the signature page of this contract.

(e) Escrowee or any member of its firm shall be permitted to act as counsel for Seller in any dispute as to the disbursement of the Downpayment or any other dispute between the parties whether or not Escrowee is in possession of the Downpayment and continues to act as Escrowee.

**7. Acceptable Funds.** All money payable under this contract, unless otherwise specified, shall be paid by:

(a) Cash, but not over $1,000.00;

(b) Good certified check of Purchaser drawn on or official check issued by any bank, savings bank, trust company or savings and loan association having a banking office in the State of New York, unendorsed and payable to the order of Seller, or as Seller may otherwise direct upon reasonable prior notice (by telephone or otherwise) to Purchaser;

(c) As to money other than the purchase price payable to Seller at Closing, uncertified check of Purchaser up to the amount of $500.00; and

(d) As otherwise agreed to in writing by Seller or Seller's attorney.

8. **Mortgage Commitment Contingency**. – Omitted (Cash Deal) ~~The obligations of Purchaser hereunder are conditioned upon issuance on or before expiration of thirty (30) calendar days from the date of the fully executed contracts (the "Commitment Date") of a written commitment from any Institutional Lender pursuant to which such Institutional Lender agrees to make a first mortgage loan, other than a VA, FHA or other governmentally insured loan, to Purchaser, at Purchaser's sole cost and expense of $000,000.00 or such lesser sum as Purchaser shall be willing to accept, at the prevailing fixed rate of interest, for a term of at least 30 years and on other customary commitment terms, whether or not conditional upon any factors other than an appraisal satisfactory to the Institutional Lender. Purchaser shall (a) make prompt application to an Institutional Lender for such mortgage loan, (b) furnish accurate and complete information regarding Purchaser and members of Purchaser's family, as required, (c) pay all fees, points and charges required in connection with such application and loan, (d) pursue such application with diligence, (e) cooperate in good faith with such Institutional Lender to obtain such commitment and (f) promptly give Notice to Seller of the name and address of each Institutional Lender to which Purchaser has made such application. Purchaser shall comply with all requirements of such commitment (or of any other commitment accepted by Purchaser) and shall furnish Seller with a copy thereof promptly after receipt thereof. If such commitment is not issued on or before the Commitment Date, then, unless Purchaser has accepted a commitment that does not comply with the requirements set forth above, Purchaser may cancel this contract by giving Notice to Seller, in which case this contract shall be deemed cancelled and thereafter neither party shall have any further rights against, or obligations or liabilities to, the other by reason of this contract, except that the Downpayment shall be promptly refunded to Purchaser and except as hereinafter set forth.~~

9. **Permitted Exceptions.** The Premises are sold and shall be conveyed subject to:

(a) Zoning and subdivision laws and regulations, and landmark, historic or wetlands designation, provided that they are not violated by the existing buildings and improvements erected on the property or their use.

(b) Easements, restrictions and covenants of record provided they are not violated by the existing buildings and improvements on the Premises or their use, do not substantially reduce the usable area of the Premises, do not contain any monetary obligations that would apply to Purchaser, do not contain a clause under which the Premises would be forfeited if they were violated, and do not materially restrict the normal use and enjoyment of the Premises or the use and development of the Premises as a subdivision or render title unmarketable.

(c) The rights of utility companies, if any, to install, maintain and operate lines, poles, pipes, distribution boxes, and other equipment and installations over, under or along the street next to the Premises or the part of the Premises next to the street, or running to improvements on the Premises.

(d) Real estate taxes that are a lien, but are not yet due and payable.

10. **Governmental Violations and Orders.** (a) Seller shall comply with all notes or notices of violations of law or municipal ordinances, orders or requirements noted or issued as of the date of closing by any governmental department having authority as to lands, housing, buildings, fire, health, environmental and labor conditions affecting the Premises. The Premises shall be conveyed free of them at Closing. Seller

shall furnish Purchaser with any authorizations necessary to make the searches that could disclose these matters.

**11. Seller's Representations.** Seller represents and warrants to Purchaser that:

(a) The Premises abut or have a right of access to a public road;
(b) Seller is the sole owner of the Premises and has the full right, power and authority to sell, convey and transfer the same in accordance with the terms of this contract;
(c) Seller is not a "foreign person," as that term is defined for purposes of the Foreign Investment in Real Property Tax Act, Internal Revenue Code ("IRC") Section 1445, as amended, and the regulations promulgated thereunder (collectively "FIRPTA");
(d) The Premises are not affected by any exemptions or abatements of taxes, except the STAR exemption; and
(e) Seller covenants and warrants that all of the representations and warranties set forth in this contract shall be true and correct at Closing.
(f) Except as otherwise expressly set forth in this contract, none of Seller's covenants, representations, warranties or other obligations contained in this contract shall survive Closing.

**12. Condition of Property.** (a) Purchaser acknowledges and represents that Purchaser is fully aware of the physical condition and state of repair of the Premises, Premises is being sold **"AS IS"**, current condition is reflected in the sale price, and of all other property included in this sale, based on Purchaser's own inspection and investigation thereof, and that Purchaser is entering into this contract based solely upon such inspection and investigation and not upon any information, data, statements or representations, written or oral, as to the physical condition, state of repair, use, cost of operation or any other matter related to the Premises or the other property included in the sale, given or made by Seller or its representatives, and shall accept the same **"AS IS"** in their present condition and state of repair, subject to reasonable use, wear, tear and natural deterioration between the date hereof and the date of closing (except as otherwise set forth in paragraph 17(e)), without any reduction in the purchase price or claim of any kind for any change in such condition by reason thereof subsequent to the date of this contract. Purchaser and its authorized representatives shall have the right, at reasonable times and upon reasonable notice (by telephone or otherwise) to Seller, to inspect the Premises before Closing.

~~(b) Purchasers have been provided the option to conduct ANY inspections deemed necessary. Cost of inspections to be at purchaser's expense. Such inspections will include water potability, septic, structural, insect infestation, radon, etc., all to be completed no later than _____, 2021, by the Purchaser. Notification of any concerns shall be made to the seller no later than **5 business days** after receipt of the inspection reports.~~

**13. Insurable Title.** Seller shall give and Purchaser shall accept such title as any licensed New York State title insurance company shall be willing to approve and insure in accordance with its standard form of title policy approved by the New York State Insurance Department, subject only to the matters provided for in this contract.

**14. Closing, Deed and Title.** (a) "Closing" means the settlement of the obligations of Seller and Purchaser to each other under this contract, including the payment of the purchase price to Seller, and the delivery to Purchaser of a deed (Bargain & Sale Deed with Covenant Against Grantor's Acts) in proper statutory short form for record, duly executed and acknowledged, so as to convey to Purchaser fee simple title to the Premises, free of all encumbrances, except as otherwise herein stated. The deed shall contain a covenant by Seller as required by subd. 5 of Section 13 of the Lien Law.

**15. Closing Date and Place**. Closing shall take place in Ulster County at the office of Lender or Seller's attorney located at 63 John Street, Kington, NY. Closing shall take place on or about July 21st, 2021. Seller shall not be required to close title beyond Thirty (30) miles of Kingston, New York. In the event that Purchaser shall request a more distant closing, and in the event Seller shall agree thereto, then

at the Closing Purchaser shall pay to the Seller's attorney an amount calculated at the rate of **$150.00** per hour for travel time.

**16. Term of Offer:** The Contract shall be returned within 10 business days of receipt, unless extended by mutual consent, or the acceptance of the offer shall be consider withdrawn by the Seller.

**17. Conditions to Closing.** This contract and Purchaser's obligation to purchase the Premises are also subject to and conditioned upon the fulfillment of the following conditions precedent:

(a) The accuracy, as of the date of Closing, of the representations and warranties of Seller made in this contract.

(b) The delivery by Seller to Purchaser of a valid and subsisting Certificate of Occupancy or other required certificate of compliance, or evidence that none was required, covering the building(s) and all of the other improvements located on the property authorizing their use as a ***SINGLE***-family dwelling at the date of Closing.

(c) The delivery by Seller to Purchaser of a certificate stating that Seller is not a foreign person, which certificate shall be in the form then required by FIRPTA, or a withholding certificate from the I.R.S. If Seller fails to deliver the aforesaid certificate or if Purchaser is not entitled under FIRPTA to rely on such certificate, Purchaser shall deduct and withhold from the purchase price a sum equal to 10% thereof (or any lesser amount permitted by law) and shall at Closing remit the withheld amount with the required forms to the Internal Revenue Service.

(d) The delivery of the Premises and all buildings(s) and improvements comprising a part thereof in broom clean condition, vacant and free of leases or tenancies, together with keys to the Premises.

(e) **On the day of Closing, all plumbing (including water supply and septic systems, if any), heating and air conditioning, if any, electrical and mechanical systems, equipment and machinery in the building(s) located on the property and all appliances which are included in this sale shall be in the same working order as of the date of Purchaser's inspection, unless modification or repairs are further agreed to by the parties and included as an attached Repair Rider.**

(f) If the Premises are a one- or two-family house, delivery by the parties at Closing of affidavits in compliance with state and local law requirements to the effect that there is installed in the Premises a smoke detecting alarm device or devices.

(g) The delivery by the parties of any other affidavits required as a condition of recording the deed.

**18. Deed Transfer and Recording Taxes.** At Closing, certified or official bank checks payable to the order of the appropriate State, City or County officer in the amount of any applicable transfer and/or recording tax payable by reason of the delivery or recording of the deed or mortgage, if any, shall be delivered by the party required by law or by this contract to pay such transfer and/or recording tax, The Seller, together with any required tax returns duly executed and sworn to, and such party shall cause any such checks and returns to be delivered to the appropriate officer promptly after Closing. The Seller shall generate the TP-584 and RP-5217. The obligation to pay any additional tax or deficiency and any interest or penalties thereon shall survive Closing.

**19. Apportionments and Other Adjustments; Water Meter and Installment Assessments.** (a) To the extent applicable, the following shall be apportioned as of midnight of the day before the day of Closing:

(i) Taxes, water charges and sewer rents, on the basis of the fiscal period for which assessed; and (ii) fuel.

(b) If Closing shall occur before a new tax rate is fixed, the apportionment of taxes shall be upon the basis of the tax rate for the immediately preceding fiscal period applied to the latest assessed valuation.

(c) If there is a water meter on the Premises, Seller shall furnish a reading to a date not more than 30 days before Closing and the unfixed meter charge and sewer rent, if any, shall be apportioned on the basis of such last reading.

(d) If at the date of Closing the premises are affected by an assessment which is or may become payable in annual installments, and the first installment is then a lien, or has been paid, then for the purposes of this contract all the unpaid installments shall be considered due and shall be paid by Seller at or prior to Closing.

(e) Any errors or omissions in computing apportionments or other adjustments at Closing shall be corrected within a reasonable time following Closing. This subparagraph shall survive Closing.

**20. Allowance for Unpaid Taxes, etc.** Seller has the option to credit Purchaser as an adjustment to the purchase price with the amount of any unpaid taxes, assessments, water charges and sewer rents, together with any interest and penalties thereon to a date not less than five business days after Closing, provided that official bills therefor computed to said date are produced at Closing.

**21. Use of Purchase Price to Remove Encumbrances.** If at Closing there are other liens or encumbrances that Seller is obligated to pay or discharge, Seller may use any portion of the cash balance of the purchase price to pay or discharge them, provided Seller shall simultaneously deliver to Purchaser at Closing instruments in recordable form and sufficient to satisfy such liens or encumbrances of record, together with the cost of recording or filing said instruments. As an alternative Seller may deposit sufficient moneys with the title insurance company employed by Purchaser acceptable to and required by it to assure their discharge, but only if the title insurance company will insure Purchaser's title clear of the matters or insure against their enforcement out of the Premises and will insure Purchaser's Institutional Lender clear of such matters. Upon reasonable prior notice (by telephone or otherwise), Purchaser shall provide separate certified or official bank checks as requested to assist in clearing up these matters.

**22. Title Examination; Seller's Inability to Convey; Limitations of Liability; Pick-Up Fees** (a) Purchaser shall order an examination of title in respect of the Premises from a title company licensed or authorized to issue title insurance by the New York State Insurance Department or any agent for such title company promptly after the execution of this contract or, if this contract is subject to the mortgage contingency set forth in paragraph 8, after a mortgage commitment has been accepted by Purchaser. Purchaser shall cause a copy of the title report and of any additions thereto to be delivered to the attorney(s) for Seller promptly after receipt thereof.

(b)(i) If at the date of Closing Seller is unable to transfer title to Purchaser in accordance with this contract, or Purchaser has other valid grounds for refusing to close, whether by reason of liens, encumbrances or other objections to title or otherwise (herein collectively called "Defects"), other than those subject to which Purchaser is obligated to accept title hereunder or which Purchaser may have waived and other than those which Seller has herein expressly agreed to remove, remedy or discharge and if Purchaser shall be unwilling to waive the same and to close title without abatement of the purchase price, then, except as hereinafter set forth, Seller shall have the right, at Seller's sole election, either to take such action as Seller may deem advisable to remove, remedy, discharge or comply with such Defects or to cancel this contract; (ii) if Seller elects to take action to remove, remedy or comply with such Defects, Seller shall be entitled from time to time, upon Notice to Purchaser, to adjourn the date for Closing hereunder for a period or periods not exceeding 60 days in the aggregate (but not extending beyond the date upon which Purchaser's mortgage commitment or rate lock, if any, shall expire), and the date for Closing shall be adjourned to a date specified by Seller not beyond such period. If for any reason whatsoever, Seller shall not have succeeded in removing, remedying or complying with such Defects at the expiration of such adjournment(s), and if Purchaser shall still be unwilling to waive the same and to close title without abatement of the purchase price, then either party may cancel this contract by Notice to the other given within 10 days after such adjourned date; (iii) notwithstanding the foregoing, the existing mortgage (unless

this sale is subject to the same) and any matter created by Seller after the date hereof shall be released, discharged or otherwise cured by Seller at or prior to Closing.

(c) If this contract is cancelled pursuant to its terms, other than as a result of Purchaser's default, this contract shall terminate and come to an end, and neither party shall have any further rights, obligations or liabilities against or to the other hereunder or otherwise, except that: (i) Seller shall promptly refund or cause the Escrowee to refund the Downpayment to Purchaser, and (ii) the obligations under paragraph 28 shall survive the termination of this contract.

(d) Seller's maximum liability to Purchaser's title agent for pick-up fees for the payoff and satisfaction of any mortgage, including overnight mailing charges, shall not exceed $150.00 for the first such mortgage and $75.00 for each additional instrument if there is more than one mortgage. If a mortgage payoff statement does not include a satisfaction recording fee, Seller will be responsible for an additional charge of $50.50 for such mortgage satisfaction to be recorded, and any additional recording charges of the county clerk in respect of such mortgage. Seller shall not be liable to Purchaser's title agent for pick-up fees for the payment of any delinquent real property taxes. Any pick-up fees in excess of the foregoing shall be the responsibility of the Purchaser.

**23. Affidavit as to Judgments, Bankruptcies, etc.** If a title examination discloses judgments, bankruptcies or other returns against persons having names the same as or similar to that of Seller, Seller shall deliver an affidavit at Closing showing that they are not against Seller.

**24. Defaults and Remedies.** (a) If Purchaser defaults hereunder, Seller's sole remedy shall be to receive and retain the Downpayment as liquidated damages, it being agreed that Seller's damages in case of Purchaser's default might be impossible to ascertain and that the Downpayment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty.

(b) If Seller defaults hereunder, Purchaser shall have such remedies as Purchaser shall be entitled to at law or in equity, including, but not limited to, specific performance.

**25. Purchaser's Lien.** All money paid on account of this contract and the reasonable expenses of examination of title to the Premises and of any survey and survey inspection charges, are hereby made liens on the Premises, but such liens shall not continue after default by Purchaser under this contract.

**26. Notices.** Any notice or other communication ("Notice") shall be in writing and either (a) sent by either of the parties hereto or by their respective attorneys who are hereby registered to do so on their behalf or by the Escrowee, by registered or certified mail, postage prepaid, or (b) delivered in person or by overnight courier, with receipt acknowledged, or (c) sent by fax or electronic mail to the party's attorney, to the respective addresses given in this contract for the party and the Escrowee, to whom the Notice is to be given, or to such other address as such party or Escrowee shall hereafter designated by Notice given to the other party or parties and the Escrowee pursuant to this paragraph. Each Notice mailed shall be deemed given only upon receipt by Escrowee and each Notice delivered in person or by overnight courier shall be deemed given when delivered. Each Notice by fax shall be deemed given when transmission is confirmed by the sender's fax machine. Each Notice by electronic mail shall be deemed given only when the recipient acknowledges receipt thereof by return email. A copy of each Notice sent to a party shall also be sent to the party's attorney. The attorneys for the parties are hereby authorized to give and receive on behalf of their clients all Notices and deliveries. This contract may be delivered as provided above or by ordinary mail.

**27. No Assignment.** This contract may not be assigned by Purchaser without the prior written consent of Seller in each instance and any purported assignment(s) made without such consent shall be void.

**28. Broker.** Seller and Purchaser each represents and warrants to the other that it has not dealt with any real estate broker in connection with this sale other than Coldwell Banker Village Green Realty and Keller Williams Hudson Valley North ("Brokers") and Seller shall pay Broker any commission earned pursuant

to a separate agreement between Seller and Broker. Seller and Purchaser shall indemnify and defend each other against any costs, claims and expenses, including reasonable attorneys' fees, arising out of the breach on their respective parts of any representation or agreement contained in this paragraph. The provisions of this paragraph shall survive Closing or, if Closing does not occur, the termination of this contract.

**29.    Miscellaneous.** (a) All prior understandings, agreements, representations and warranties, oral or written, between Seller and Purchaser are merged in this contract; it completely expresses their full agreement and has been entered into after full investigation, neither party relying upon any statement made by anyone else that is not set forth in this contract.

(b)    Neither this contract nor any provision thereof may be waived, changed or cancelled except in writing. This contract shall also apply to and bind the heirs, distributees, legal representatives, successors and permitted assigns of the respective parties. The parties hereby authorize their respective attorneys to agree in writing to any changes in dates and time periods provided for in this contract.

(c)    Any singular word or term herein shall also be read as in the plural and the neuter shall include the masculine and feminine gender, whenever the sense of this contract may require it.

(d)    The captions in this contract are for convenience of reference only and in no way define, limit or describe the scope of this contract and shall not be considered in the interpretation of this contract or any provision hereof.

(e)    This contract shall not be binding or effective until duly executed and delivered by Seller and Purchaser.

(f)    Seller and Purchaser shall comply with IRC reporting requirements, if applicable. This subparagraph shall survive Closing.

(g)    Each party shall, at any time and from time to time, execute, acknowledge where appropriate and deliver such further instruments and documents and take such other action as may be reasonably requested by the other in order to carry out the intent and purpose of this contract. This subparagraph shall survive Closing.

(h)    This contract is intended for the exclusive benefit of the parties hereto and, except as otherwise expressly provided herein, shall not be for the benefit of, and shall not create any rights in, or be enforceable by, any other person or entity.

(i)    If applicable, the complete and fully executed disclosure of information on **lead-based paint** and/or lead-based paint hazards is attached hereto and made a part hereof.

**30.  Property Condition Disclosure Statement**. If the Seller has not provided a Property Condition Disclosure Statement they will provide a $500.00 credit to the Purchaser.

**31. Counterparts and Facsimile or Electronic Transmission**. This contract may be executed in multiple counterparts and/or by facsimile or electronic (scanned) transmission, all of which when taken together shall constitute one and the same instrument.

**32. Attorneys for Purchaser and Seller are Agents**.  Seller does hereby appoint Tracy Kellogg, Esq. as his/her agent, and Purchaser does hereby appoint Ann Harrison, Esq. as his/her agent, to execute or otherwise authorize in writing any and all instruments having reference to this Contract, including but not limited to extensions of time for Closing, authorization of the disbursement of funds and form of payments at closing including bank transfers (wires), and modifications of the terms and conditions of this Contract.

**33. Death or Disability of Purchaser**.  In the event of the death or permanent disability of Purchaser (or, if there are two Purchasers, one or both of them) prior to the consummation of this Contract and the delivery of the Deed hereunder, the survivor or legal representative of the Purchaser hereby has the option of proceeding with this Contract or declaring the same null and void, with the Downpayment and binder deposit paid on account hereof being returned to the survivor or the legal representative of the Purchaser.

The foregoing option to declare this Contract null and void shall be exercised by the giving of Notice to Seller by the survivor or legal representative of the Purchaser no more than 10 days after the event giving rise to such option.

34. **Lead Paint Disclosure**. Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.

Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing. Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

Purchaser acknowledges that Purchaser has received the pamphlet ***Protect Your Family from Lead in Your Home***. Purchaser has received a 10-day opportunity (or mutually agreed upon period) to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

*[SIGNATURE PAGE TO IMMEDIATELY FOLLOW]*

IN WITNESS WHEREOF, this contract has been duly executed by the parties hereto.

| ESTATE OF NACCARATO | IC QUALITY LLC |
|---|---|
| *Mary Lou Chatterton* | [signature] as Member |
| Mary Lou Chatterton, as Executrix | Sergio Vazquez Cortes |

**Attorney for Seller:**

Tracy Kellogg, Esq.
63 John St, Suite 2
Kingston, NY 12401
Phone: (914) 388-7615
tk@tracykellogg.com

**Attorney for Purchaser:**

Ann Harrison, Esq.
PO Box 3394
Kingston, NY 12402
(845) 518-2360
aeharrison37@gmail.com

Receipt of the Downpayment is acknowledged and the undersigned agrees to act in accordance with the provisions of paragraph 6.

*Tracy Kellogg*
Tracy Kellogg, Esq. as Escrowee

Addendum to Contract of Sale

This Addendum is entered into between the parties designated below who are the Seller and Purchasers described in a Contract of Sale concerning premises situate at 414 Woodland Drive, Town of Olive, County of Ulster New York, Tax Map # 46.3-1-3. The parties agree to modify and amend said Contract as follows:

1. The signature line on the last page of the Contract shall be changed to reflect Sergio Vazquez Cortes as the correct Purchaser.

2. The Purchasers correct address I.C. Quality, PO Box 802, Kerhonkson, NY 12466.

3. Paragraph 2 of the Contract is modified to specify that the following appliances shall remain at the premises and are includes as part of the sale at no extra cost: stove/range, refrigerator, microwave, dishwasher, washer/dryer, outside generator.

4. Seller agrees to allow Purchaser access to the premises for the purposes of taking measurements for future renovations. Access can occur up to but more than 4 times and will specifically include the date of July 11, 2021.

5. Paragraph 15 of the Contract is modified to provide a closing date on or after 8/8/2021.

6. Unless expressly provided herein to the contrary, this Addendum shall not change the "Date of this Contract" or the date of the commencement of any contingencies as set forth in the Contract of Sale.

7. All other terms and conditions of the Contract of Sale shall remain in full force and effect, provided that if there is any inconsistency between the same and this Addendum, the terms and conditions of this Addendum shall prevail.

*Mary Lou Chatterton*
Seller, Estate of Naccarato by:      Dated: Jul 13, 2021

Purchaser, I.C. Quality LLC by Sergio Vazquez Cortes      Dated: 7/9/21